IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

LTA, INC.; AND INNOVATIVE
BUILDERS, INC.                                                                                              PLAINTIFFS

VERSUS                                              CIVIL ACTION NO. 1:11cv213WJG-RHW

JOSEPH E. BREECK d/b/a
J & J BOATWORKS, INC.                                                                                  DEFENDANT

MEMORANDUM OPINION AND ORDER

      THIS MATTER is before the Court on the motion [5] of the Defendant, Joseph Breeck d/b/a J & J Boatworks, Inc.'s [J&J], to dismiss for lack of personal jurisdiction. The motion was filed in connection with a contract dispute between the Plaintiffs, LTA, Inc. [LTA], and Innovative Builders, Inc. [Innovative] ,and the Defendant. The Plaintiffs,, maintain that this Court may assert its jurisdiction over the Defendant. (Ct. R., Doc. 14). Upon consideration of the Defendant's motion, the Plaintiffs' response and memorandum, (Ct. R., Docs. 14, 15), and the Defendant's rebuttal, (Ct. R., Doc. 16), the Court is of the opinion that the motion should be granted in part and denied in part.

Factual Summary

      J&J is incorporated in the state of Indiana, and maintains its principle place of business in Indiana. (Ct. R., Doc. 5-1, p. 1). It primarily operates as a boat manufacturer. (Ct. R., Doc. 14-1, p. 1). Joseph Breeck, who at some point did business as J&J, is a resident of Indiana. (Ct. R., Doc. 15). The Defendant does not own any real property in Mississippi, nor has he/it leased

or rented any property in this state. (Ct. R., Doc. 5-1, pp. 1-2). Moreover, the Defendant does not have any employees in, is not registered to do business in, has not incurred or paid taxes in, has no office in, has not locally advertised in, and has never sent representatives to Mississippi. (Ct. R., Doc. 5-1, p. 2).

LTA is a Louisiana corporation, and Innovative is a Mississippi corporation. (Ct. R., Doc. 15, p. 1). LTA and Innovative perform various types of construction work. (*Id.*) After the Deep Water Horizon oil spill, they began participating in clean-up efforts. (*Id.*)

The explosion on the Deep Water Horizon occurred on April 20, 2010, and clean-up efforts began shortly thereafter. The Plaintiffs chose to participate in these efforts, and needed to purchase oil skimmer boats and barges to do so. (Ct. R., Doc. 15, p. 2). After seeing the Defendant's advertisement in *Boats and Harbors*, a widely distributed publication, the Plaintiffs contacted the Defendant in an effort to acquire the needed vessels. (*Id.*) Negotiations were conducted via telephone, and the Plaintiffs ultimately entered into an Agreement to purchase ten barges and six skimmer boats. (*Id.*) Defendant never visited Mississippi in connection with its Agreement with the Plaintiffs, and all in-person meetings regarding the Agreement were conducted in Indiana. (Ct. R., Doc. 5-1, p. 2).

The Agreement is memorialized in two documents dated June 26, 2010. (Ct. R., Doc. 15, p. 2). The first, the "Purchase Agreement," summarized the Agreement. ( *Id.*) The second, the "Invoice for Payment," indicates the amount Plaintiffs were charged by Defendant for the first delivery of boats. (*Id.*) By August 2010, however, the parties began disputing the terms of the Agreement. (*Id.*, at 3.) On or about March 10, 2011, the Plaintiffs filed this suit against the Defendant. (*Id.*) The case was then removed to this Court on May 18, 2011. (*Id.*)

<u>Legal Standard</u>

The Plaintiffs bear the burden of establishing the district court's jurisdiction over the Defendant. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) (citing *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270-71 (5th Cir. 1983)).

When the district court decides a defendant's motion without an evidentiary hearing, the plaintiff's burden is met by presenting a *prima facie* case for personal jurisdiction. The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiffs for purposes of determining whether a *prima facie* case for personal jurisdiction has been established. (*Id.*)

"Personal jurisdiction over an out-of-state defendant involves two inquiries: (1) whether a forum state's long-arm statute permits service of process; and (2) whether the assertion of personal jurisdiction would violate due process." *Seitz v. Envirotech Sys. Worldwide, Inc.*, 513 F.Supp. 2d 855, 859 (S.D. Tex. 2007) (citing *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)). The Mississippi long-arm statute[1] applies to three types of nonresident defendants: "(1) nonresidents who make a contract with a resident to be performed in whole or in part within the state; (2) nonresidents who commit a tort in whole or in part within the state against a resident or a nonresident; (3) and nonresidents who are 'doing business' within the state." *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 617 (5th Cir. 1989); *see McMahan Jets, L.L.C. v. X-Air Flight Support, L.L.C.*, 2011 WL 52557 at *3 (S.D. Miss. Jan. 7, 2011). Here, the Plaintiffs assert that the Defendant falls under the "contract prong" of the Mississippi long-arm statute. (Ct. R., Doc. 14, p. 4). Under the contract prong a "nonresident

---

[1] Miss. Code Ann. § 13-3-57.

defendant must 'make a contract with a *resident* of [Mississippi]' to be amenable to process." *Cycles*, 889 F.2d at 617.

The next inquiry is whether exercising personal jurisdiction over the Defendant would violate due process. *Seitz*, 513 F. Supp. 2d at 859.

> The exercise of personal jurisdiction comports with due process where: (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice."

*Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 367 (5th Cir. 2010); *ITL Int'l, Inc. v. Constenla*, 2010 WL 4537931 at *4 (S.D. Miss. Nov. 2, 2010). "The 'minimum contacts' prong of the two-part test may be further subdivided into contacts that give rise to 'general' personal jurisdiction and 'specific' personal jurisdiction." *Choice Healthcare*, 615 F.3d at 368. Here, the Plaintiffs argue that the Court has specific jurisdiction. (Ct. R., Doc. 14, p. 5). A court may "exercise 'specific' jurisdiction where a 'nonresident defendant has purposefully directed his activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Choice Healthcare*, 615 F.3d at 368 (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008)); *see Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985). "The non-resident's purposefully directed activities in the forum must be such that he could reasonably anticipate being haled into court in the forum state. In the Fifth Circuit, specific jurisdiction also requires that the exercise of personal jurisdiction be fair and reasonable." *Constenla*, 2010 WL 4537931 at *5 (citing *Burger King*, 471 U.S. at 473, and *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)).

### Mississippi Long-Arm Statute

Under the contract prong of the Mississippi long-arm statute, a nonresident defendant must make a contract with a *resident of Mississippi* to be amenable to process. *Cycles*, 889 F.2d at 617. Because LTA is a Louisiana corporation, the Court lacks jurisdiction with respect to LTA's claim against the Defendant. *See Moore Video Distrib., Inc. v. Quest Entm't, Inc.*, 823 F. Supp. 1332 (S.D. Miss. 1993). "Having established that service of process under the Mississippi long-arm statute was not appropriate, the Court need not necessarily consider whether the exercise of jurisdiction by this Court comports with the due process clause of the 14th Amendment and the traditional notions of substantial justice and fair play." (*Id.*, citing *Thompson*, 755 F.2d 1162 (5th Cir. 1985). Accordingly, the Court finds that Defendant's motion to dismiss LTA's claim should be granted.

Although LTA's claim fails under the Mississippi long-arm statute, the Court will consider whether Innovative meets its burden of establishing a *prima facie* case for personal jurisdiction. *McMahan Jets*, 2011 WL 52557 at *2. The contract prong will be satisfied where the contract is performed in part or in whole in Mississippi. (*Id.* at *3.) As some of the vessels were delivered to a location in Pass Christian, Mississippi, part of the contract was performed in Mississippi. *See also Constenla*, 2010 WL 4537931 at *4 (holding that the parties' F.O.B. term directing delivery to Mississippi constituted partial performance of a contract in Mississippi).

### Due Process – Minimum Contacts

After establishing that the long-arm statute applies, the next inquiry is whether exercising personal jurisdiction over J&J violates due process. *Seitz*, 513 F. Supp. 2d at 859. To comport with due process, a nonresident defendant must have sufficient minimum contacts with the forum state. *Choice Healthcare*, 615 F.3d at 367. When a defendant "purposefully directs" his

activities to the forum state, and the litigation "arises out of" or "relates to" those activities, minimum contacts and specific jurisdiction are established. (*Id.* at 368.)

The factual setting of the present case closely mirrors cases where courts have found the nonresident defendant's contacts with the forum state to be insufficient to extend jurisdiction. *See Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184 (5th Cir. 1978); *see Benjamin v. Western Boat Building Corp.*, 472 F.2d 723 (5th Cir.), *cert. denied*, 414 U.S. 830 (1973); *see NTE Aviation, Ltd. v. LIAT (1974) Ltd.*, 561 F. Supp. 2d 687 (E.D. Tex. 2007). In *Charia*, the Court compared that factual setting with the setting in *Benjamin*. *Charia*, 583 F.2d at 187. The Court explained that *Benjamin* was a "Louisiana diversity contract case brought by a Louisiana resident (Benjamin) against an out-of-state shipbuilder (Western Boat, a Washington corporation)." (*Id.*) In its analysis, the Court outlined Western Boat's only contacts with Louisiana:

> It is necessary to understand that these factors constitute the entire sum of Western Boat's contacts with Louisiana. Western Boat (1) is a corporation organized under the laws of Washington, (2) is not qualified to do business in Louisiana, (3) has neither incurred nor paid taxes in Louisiana, (4) has not appointed an agent for service of process in Louisiana, (5) has no office, no place of business, no officers, no agents, no employees, no salesmen, no licensees, no franchisees, and distributors in Louisiana, (6) has no independent dealers in Louisiana, (7) has no assets in Louisiana, (8) has never advertised in local Louisiana media and is not listed in any Louisiana telephone directories, (9) has never delivered, or arranged to be delivered, a vessel of any kind in Louisiana, (10) has never made a sale to a resident of Louisiana, other than the sale to Benjamin, and (11) has never sent representatives, inspectors, or repair or service personnel to Louisiana. Therefore, Western Boat's Louisiana contacts are limited solely to those contacts generated in the course of the transaction with Benjamin.

(*Id.*, quoting *Benjamin*, 472 F.2d at 729).

The Court in *Charia* then proceeded to describe the similarities between its situation and the one presented in *Benjamin*. (*Id.*) at 186. It stated:

> Plaintiff Steven Charia, a resident of New Orleans, Louisiana, saw advertisements which defendant, Cigarette Racing Team, Inc., a Florida boatbuilding corporation, had placed in several national boating magazines. After speaking to other Louisiana residents who had purchased Cigarette boats, plaintiff wrote from Louisiana to Cigarette in Florida, seeking further information. Cigarette replied that the boat could be delivered six weeks after an order was placed, and that a deposit of $3,000 was required, with "the balance due upon completion of the boat F.O.B. factory here in Miami." Along with the reply, Cigarette sent Charia literature about its boats. Subsequently, several telephone conversations took place, some of which were initiated by Cigarette, others by Charia.

(*Id.*)

Important similarities between the cases included: (1) the resident plaintiff initiated contact with the nonresident defendant; (2) the defendant was identified by the plaintiff via national advertisement; (3) negotiations were conducted via mail and long distance telephone calls; (4) the defendant initiated some communications with the plaintiff during the negotiation process; (5) the contract was completed in the nonresident's state; and (6) no face-to-face conversations took place in the plaintiff's state. (*Id.*) at 187-8.

The *Charia* Court also highlighted the differences between the two cases. (*Id.*) at 188. The Court explained:

> The outcome of this case then depends upon whether three factual differences between *Benjamin* and the case sub judice call for a different result. Two differences arise in the ninth and tenth factors on the *Benjamin* list. In the present case, (9) Cigarette did "arrange" for the boat to be delivered to Louisiana by a private contractor, FOB Florida, and (10) Cigarette made three additional sales to Louisiana residents. The third difference is found in the fact that Charia has raised a tort claim subsidiary to his contract claim.

(*Id.*)

After analyzing these differences, the Court concluded that it did not have personal jurisdiction over the nonresident defendant. (*Id.*, at 190.)

Although *Benjamin*[2] and *Charia*[3] were decided before the Supreme Court's decisions in *World-Wide Volkswagen*[4] and *Burger King*[5], they have nonetheless been used recently as measures for determining the sufficiency of minimum contacts. *NTE Aviation,* 561 F. Supp. 2d at 690-91. In *NTE Aviation,* the plaintiff, NTE Aviation (a Texas corporation), filed a breach of contract suit against the defendant, LIAT (a West Indies corporation). (*Id.* at 688.) The contract in-dispute was a lease agreement between the parties, whereby NTE Aviation, as lessor, would lease to LIAT, as lessee, a jet engine. (*Id.*) After NTE Aviation filed suit in Texas, LIAT filed a motion to dismiss for lack of personal jurisdiction. (*Id.*) In analyzing whether LIAT had sufficient minimum contacts with Texas, the court stated:

> In *Charia,* the defendant's sole contact with the state was the one contract made with the plaintiff. Additionally, just as in the instant case, there were telephone calls and mailings between the parties and there was more contact including the fact that the finished product was delivered to the forum state and the defendant had other customers in the forum state. In *Benjamin,* as in the instant case, the defendant and plaintiff communicated about the contract, but the defendant never sent a representative to the forum state and had no other customers in the forum state.

(*Id.*, at 690 (citations omitted)).

The court concluded that LIAT's contacts with Texas were insufficient to establish personal jurisdiction. (*Id.*, at 691.)

### Comparison of Minimum Contacts

In its effort to demonstrate the existence of specific jurisdiction, Innovative cites several

---

[2] 472 F.2d 723.

[3] 583 F.2d 184.

[4] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

[5] 471 U.S. 462.

facts addressing J&J's minimum contacts with Mississippi.  Innovative first points to J&J's advertisement in *Boats and Harbors.*  (Ct. R., Doc. 15, p. 2).  Roger Caplinger, the president of Innovative, wrote in his affidavit:  "I learned of J&J Boatworks, Inc. ("J&J") through *Boats & Harbors* magazine, where J&J advertised.  I also spoke to several people about J&J and their ability to perform the desired work.  Several individuals in Mississippi and Louisiana indicated that they had engaged in business with J&J and had boats constructed by J&J.  Further, J&J was advertising on the internet."  (Ct. R., Doc. 14-1, p. 1).  Innovative also points to  J&J's phone calls to Mississippi made in connection with the Agreement; a purchase agreement and invoices sent to Mississippi; vessels delivered to Mississippi; emails sent to Mississippi; and statements indicating that J&J intended to make more shipments to Mississippi and receive corresponding payments from Innovative.  (Ct. R., Doc. 15, pp. 2-3).

In terms of minimum contacts, the only potentially material differences between Innovative*'s* case and *Charia*[6] are:  (1) the quantity of materials delivered, (2) the nonresident defendant's indications of future performance, and (3) the number of the nonresident defendant's other customers in the state.  Again, "[s]pecific jurisdiction exists when the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities."  *Constenla* at *4.

The quantity of materials delivered, in and of itself, does not suggest that J&J purposefully directed its activities toward Mississippi – that quantity was merely an incident of its sole contract with Innovative.  Likewise, J&J's indications that it would seek complete performance, *i.e.*, making delivery of and receiving payment for the remainder of the vessels,

---

[6]583 F.2d 184.

does not support the notion that it purposefully directed its activities at Mississippi. Those statements were made in connection with the Agreement with Innovative, and J&J did not indicate that it would seek subsequent contracts with Innovative or any other Mississippi resident.

Lastly, Innovative claims that J&J had "several" customers in Mississippi. (Ct. R., Doc. 14-1, p. 1). In *Charia,* the nonresident defendant made three additional sales to residents of the forum state. *Charia*, 583 F.2d at 189. The Court concluded, "Cigarette sold four boats in Louisiana in a 5-year period, sales which we consider, in the circumstances of this case, to be isolated and sporadic. Cigarette's isolated sales did not involve purposeful conduct within Louisiana so as to avail itself of the benefits and protections of Louisiana laws." (*Id.*) Here, however, it is unclear how many additional customers J&J has in Mississippi, and how many contracts J&J has entered into with Mississippi residents. Due to this factual uncertainty, the Court will stay J&J's motion to dismiss Innovative's claim.

## Jurisdictional Discovery

The Plaintiffs request that, in the event they fail to establish a *prima facie* case, the Court conduct jurisdictional discovery. (Ct. R., Doc. 14, pp. 5-6). "On a motion to dismiss for lack of personal jurisdiction, the plaintiff rather than the movant has the burden of proof. The plaintiff need not, however, establish personal jurisdiction by a preponderance of the evidence; *prima facie* evidence of personal jurisdiction is sufficient." *Wyatt v. Kaplan,* 686 F.2d 276, 280 (5th Cir. 1982) (citations omitted). With respect to the Plaintiffs' request for discovery, "[d]iscovery on matters of personal jurisdiction, therefore, need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Wyatt*, 686 F.2d at 284 (citations omitted). Innovative's

claim, that "[s]everal individuals in Mississippi and Louisiana indicated that they had engaged in business with J&J and had boats constructed by J&J," raises an issue of fact. (Ct. R., Doc. 14-1, p. 1). The Court therefore finds jurisdictional discovery is required to resolve the issue. "When a defendant challenges personal jurisdiction, courts generally permit depositions confined to the issues raised in the motion to dismiss." *Wyatt*, 686 F.2d at 283. "[T]he judge may determine these issues by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Washington v. Norton Mfg., Inc.*, 588 F.2d 441, 443 (5th Cir. 1979). In the case at hand, J&J's contacts with Mississippi should be addressed through affidavits detailing the number and the nature of its contacts with the state. This discovery is limited to establishing: (1) how many Mississippi residents have engaged in business with J&J, and (2) and the nature of those interactions.

## Conclusion

Because LTA cannot assert jurisdiction under the contract prong of the Mississippi long-arm statute, the Court finds that J&J's motion to dismiss for lack of personal jurisdiction with respect to LTA's claim should be granted. With respect to Innovative's claim, however, the Court finds that the factual uncertainty concerning J&J's contacts with Mississippi precludes dismissal. Accordingly, the Court will stay the motion to dismiss Innovative's claim pending the resolution of jurisdictional discovery. To facilitate jurisdictional discovery, Innovative and J&J should submit affidavits in accordance with this Order. The parties should also produce the much-referenced J&J advertisement that appeared in *Boats and Harbors* magazine. It is, therefore,

ORDERED that the Defendant's motion [5] to dismiss be, and is hereby, granted in part and stayed in part. It is further,

ORDERED that the Defendant's motion to dismiss LTA's claim be, and is hereby, granted. It is further,

ORDERED that Plaintiff LTA's claims are dismissed without prejudice. It is further,

ORDERED that the Defendant's motion to dismiss Innovative's claim is stayed pending further discovery. It is further,

ORDERED that the Plaintiffs' request for jurisdictional discovery is granted. It is further,

ORDERED that Innovative and J&J submit the advertisement and affidavits, in accordance with this Order within 30 days, or by no later than September 26, 2011.

SO ORDERED, this the 26th day of August, 2011.

                                         *Walter J. Gex III*
                               UNITED STATES SENIOR DISTRICT JUDGE